G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 1394
**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
**T: 702-384-7111 / F: 702-384-0605**
gma@albrightstoddard.com

MARK C. RIFKIN, ESQ. (*pro hac vice* forthcoming)
JEAN Y. DU PONT, ESQ. (*pro hac vice* forthcoming)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
270 Madison Avenue, 9th Floor
New York, New York 10016
**T: 212-545-4600**

BETSY C. MANIFOLD, ESQ. (*pro hac vice* forthcoming)
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Symphony Towers, 750 B Street, Suite 1820
San Diego, California 92101
**T: 619-238-4599**

*Attorneys for Plaintiff Elizabeth Florence Emanuel*

Albright Stoddard Warnick & Albright

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Elizabeth Florence Emanuel,<br><br>Plaintiff,<br><br>v.<br><br>Sportbox Entertainment Group, Inc.; Astound Group; See Global Entertainment, Inc.; LV Exhibitions LP; and LV Exhibitions, Inc.,<br><br>Defendants. | Case No.: 2:26-cv-__________<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Elizabeth Florence Emanuel ("Plaintiff"), by and through her undersigned counsel, alleges as follows:

/ / /

/ / /

AS Albright Stoddard Warnick & Albright

**INTRODUCTION**

1. This is an action for copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*., and for violation of Nevada's Deceptive Trade Practices Act, NRS 598.0915.

2. Plaintiff is the owner of the copyright in an original artistic work consisting of the original applied patterns and embellishments, the pattern and illustration, and the artwork created for use on the fabric incorporated into the world's most famous dress, known worldwide as "Princess Diana's Wedding Dress."

3. Princess Diana's Wedding Dress is an iconic and immediately recognizable work of art, crafted of ivory silk taffeta and antique Queen Mary's lace embellished with more than one thousand hand-applied pearls and more than 10,000 hand-applied mother-of-pearl sequins, both in original and unique artistic designs, along with a full crinoline skirt and dramatic 25-foot train bordered with original and unique hand-designed and distinctive hand-embroidered lace, large, puffed gigot sleeves, and a distinctive hand-designed 12-meter silk tulle veil hand-embroidered with close to ten thousand iridescent sequins applied in an original and unique design.

4. Plaintiff also is the owner of the copyright in contemporaneous hand-drawn sketches she made of Princess Diana's Wedding Dress while designing the dress. The sketches include many of the protected elements of Princess Diana's Wedding Dress.

5. Plaintiff created and made Princess Diana's Wedding Dress and drew her sketches in the United Kingdom, and those artistic works are protected under applicable English copyright laws.

6. Exploiting the immense worldwide popularity and immediate recognizability of the Princess Diana's Wedding Dress, Defendants have, without Plaintiff's permission or authorization, reproduced, publicly displayed, and caused the manufacture and public display of a life-size, visually identical but inferior paper imitation

AS Albright Stoddard Warnick & Albright

(the "Paper Imitation") of Princess Diana's Wedding Dress bearing the unique and recognizable artwork that are protectable and protected elements of the original work.

7. The Paper Imitation of Princess Diana's Wedding Dress and Plaintiff's hand-drawn sketches of that artistic work are the featured exhibit in a public display called "Princess Diana & The Royals: The Exhibition" (the "Exhibition") located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

8. Defendants own, operate, or control the Exhibition and have caused or permitted the Paper Imitation of Princess Diana's Wedding Dress and Plaintiff's hand-drawn sketches of that artistic work to be included in the exhibition.

9. Recognizing Plaintiff's copyright protection in her design and creation of Princess Diana's Wedding Dress, Defendants sought, but did ***not*** obtain, Plaintiff's permission and consent to make commercial use of her original, iconic design and creation. Nonetheless, Defendants proceeded without Plaintiff's permission or consent to manufacture and publicly display the Paper Imitation bearing the unique and recognizable artwork that are protected elements of Plaintiff's artistic work.

10. Plaintiff also is the owner of copyrights to other artistic works alleged herein, also protected under English copyright law, which Defendants have infringed by exhibiting inferior but visually identical copies thereof in Exhibition as alleged herein.

11. Plaintiff brings this action to remedy and halt those acts of infringement and Defendants' other acts of infringement alleged herein. Plaintiff seeks to enforce her copyrights against Defendants for their unauthorized acts of reproduction, distribution, imitation, and all other exploitations of her copyrighted works within the United States.

12. Plaintiff seeks injunctive relief, monetary damages, costs, and such other relief as the Court deems appropriate under the Copyright Act and Nevada's Deceptive Trade Practices Act.

AS Albright Stoddard Warnick & Albright

## JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over this action, in which Plaintiff asserts claims arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq*.

14. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the entire case or controversy, including related claims under Nevada state law.

15. This Court has authority to grant the relief requested under 17 U.S.C. §§ 502–505 and applicable federal procedural law.

16. This Court has personal jurisdiction over Defendants because Defendants have conducted and are conducting commercial activities within the State of Nevada and this District, including at The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip, as alleged herein.

17. Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendants have conducted and are conducting commercial activities within the State of Nevada and this District as alleged herein and a substantial part of the acts complained of herein occurred in this District.

## PARTIES

18. Plaintiff is an award-winning British fashion designer who is best known for designing the Princess Diana Wedding Dress, worn by Lady Diana Spencer on her wedding to King Charles (then Prince Charles) in 1981.

19. Plaintiff is a resident of London, England.

20. Plaintiff owns the exclusive worldwide rights asserted in this action by virtue of her original creation of the Princess Diana Wedding Dress and the other original artistic works alleged herein and her worldwide copyrights, under the English copyright act, the Copyright, Designs and Patents Act 1988 (“CDPA”), thereto.

21. Defendant SportBox Entertainment Group Inc., d/b/a SBX Group (“SBX”) is a Florida corporation with its principal place of business in Miami, Florida.

22. Upon information and belief, Defendant SBX or one of its controlled subsidiaries or affiliates created and produces the Exhibition on the Las Vegas Strip and has been involved in the exhibition from its inception through execution.

23. Defendant Astound Group ("Astound") is a Nevada corporation with its principal place of business believed to be in Las Vegas, Nevada.

24. Upon information and belief, Defendant Astound owns eight percent of and co-produced the Exhibition alongside SBX.

25. Defendant SEE Global Entertainment, Inc. ("SEE Global") is a Nevada corporation with its principal place of business in Carson City, Nevada. Upon information and belief, Defendant SEE Global co-produced the Exhibition alongside SBX and Astound.

26. Defendant LV Exhibitions LP ("LV Exhibitions") is a Delaware limited partnership with its principal place of business believed to be in Saskatoon, Saskatchewan, Canada. Upon information and belief, Defendant LV Exhibitions is or was the operator of the "Princess Diana & The Royals: The Exhibition."

27. Defendant LV Exhibitions Inc. ("LV Inc.") is believed to be a Delaware corporation with its principal place of business in Saskatoon, Saskatchewan, Canada. Upon information and belief, Defendant LV Inc. is the general partner and controls the activities of LV Exhibitions.

28. Upon information and belief, Defendants conduct and have conducted business in Nevada by and through the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

## FACTUAL BACKGROUND

### A. Plaintiff's Copyrighted Works

29. Plaintiff is the owner of the exclusive copyrights in the Princess Diana Wedding Dress, an original artistic work.

30. Princess Diana's Wedding Dress was created and made by Plaintiff in 1981 in London, England.



AS Albright Stoddard Warnick & Albright

AS Albright Stoddard Warnick & Albright

31. Princess Diana's Wedding Dress is an original work of art crafted of ivory silk taffeta and antique Queen Mary's lace embellished with more than one thousand hand-applied decorative pearls and more than 10,000 decorative, hand-applied mother-of-pearl sequins, both in original and unique artistic designs, along with a full crinoline skirt and dramatic 25-foot train bordered with original and unique, decorative hand-designed and distinctive hand-embroidered lace, large puffed gigot sleeves, and a distinctive hand-designed 12-meter silk tulle veil hand-embroidered with close to ten thousand iridescent sequins applied in an original and unique design.

32. A decorative and non-functional element of the dress, the train of Princess Diana's Wedding Dress was one of its most important and recognizable features.

33. Princess Diana's Wedding Dress is a one-of-a-kind couture creation with an instantly recognizable silhouette, dramatic proportions, intricate craftsmanship, highly decorative embellishments, and many historical references.

34. Princess Diana's Wedding Dress is a visually memorable, immediately recognizable, and fascinating original work of theatrical couture.

35. Princess Diana's Wedding Dress was conceived and created as a unique work of one-time wearable art, with its extraordinary proportions, construction, and silhouette forming an integral part of the artistic composition. The dress is a sculpture designed to be worn only once.

36. The artistic originality of Princess Diana's Wedding Dress lies not only in its individual decorative elements, but also in their deliberate and highly recognizable composition. The positioning of the flounces at the neckline and elbows, the train addition and unique structure, the lace and the bows were fundamental to the overall visual design of the wearable work of art.

37. Princess Diana's Wedding Dress was fixed in a tangible medium of expression, including the pattern for the dress and the work itself.

38. Princess Diana's Wedding Dress was first published at the wedding of Princess Diana to King Charles (then Prince Charles) on Wednesday, July 29, 1981, at St Paul's Cathedral in London.

39. Following Princess Diana's tragic death on August 31, 1997, Princess Diana's Wedding Dress was bequeathed to her two sons, Prince William and Prince Harry. Formal ownership of Princess Diana's Wedding Dress was transferred to them in 2014, and they have owned it jointly since then.

40. Prince William and Prince Harry have loaned out Princess Diana's Wedding Dress for royal fashion exhibitions, including displays at Kensington Palace, including the "Royal Style in the Making" exhibit at Kensington Palace in 2021. However, Plaintiff has retained the copyright to the dress.

41. At Princess Diana's request, Plaintiff created a duplicate of Princess Diana's Wedding Dress to be displayed on her wax figure at Madame Tussaud's wax museum in London. In 2011, with Plaintiff's consent, that copy of Princess Diana's Wedding Dress was sold to the Museo de la Moda in Santiago, Chile, for exhibition there. However, Plaintiff retained the copyright to the dress.

42. Plaintiff also is the owner of the exclusive copyright in the famous black dress (known as the "Black Dress"), another original artistic work consisting of black silk taffeta with a distinctive and original decorative sequined ruffle on the bodice. The Black Dress established Princess Diana as a global fashion icon.

43. Plaintiff created and made the Black Dress in London, England, in 1981.

44. The Black Dress was worn by Princess Diana (then known as Lady Diana Spencer) at Goldsmith Hall on March 9, 1981, at her debut following her engagement to then-Prince Charles. The Black Dress was again worn by Princess Diana in 1983.

45. With Plaintiff's consent, the Black Dress was sold at Kerry Taylor Auctions in 2010. However, Plaintiff retained her copyright to the Black Dress.

AS Albright Stoddard Warnick & Albright

AS Albright Stoddard Warnick & Albright

46. Plaintiff also is the owner of the exclusive copyrights in a pale blue dress (the "Blue Dress") covered in thousands of mother-of-pearl sequins applied in an original and unique design, another original artistic work created for Princess Diana. Plaintiff created and made the blue tulle dress in London, England, in 1983.

47. Plaintiff also is the owner of the copyright in a series of bridesmaids' dresses she designed for Lady Diana Spencer's bridesmaids to wear at her wedding to then-Prince Charles on July 29, 1981. The bridesmaids' dresses are original works of art created and made to complement Princess Diana's Wedding Dress, each one featuring a distinctive and entirely decorative yellow sash, decorative layering of a two-tiered hem, decorative hand-applied ruffles with hand-applied, simulated lace at the neckline and elbows, and a decorative flower basket, which coordinated with the original artistic design and decorative features of Princess Diana's Wedding Dress.

48. Plaintiff also is the owner of the copyright in a highly decorative gold and white dress (the "Diaghilev Dress") she designed in London in or around 1986. The Diaghilev Dress is embellished with hand-applied decorative gold and crystal adornments in a unique pattern designed by Plaintiff.

49. Princess Diana purchased the Diaghilev Dress from Plaintiff after seeing it in her studio after its exhibition at a Red Cross benefit fashion show in 1986. She fittingly wore the dress at a performance of the Russian ballet *Ivan the Terrible* by the Bolshoi Ballet Company at the Royal Opera House in London on July 22, 1986.

50. Plaintiff also is the sole and exclusive owner of the copyright in the book called "A Dress for Diana" (the "Wedding Dress Book"), co-written by Plaintiff and her ex-husband, David Emanuel, which chronicles the creation, secrecy, and behind-the-scenes story of the design, making, and ultimately the wearing of Princess Diana's Wedding Dress.

AS Albright Stoddard Warnick & Albright

51. Together, Princess Diana's Wedding Dress, the Black Dress, the Blue Dress, the Diaghilev Dress, the bridesmaids' Dresses, and the Wedding Dress Book are referred to as the "Copyrighted Works."

52. The Copyrighted Works originated in the United Kingdom and are protected under the copyright laws applicable to that work.

53. The Copyrighted Works are original and contain protectable artistic expressions authored by Plaintiff. Plaintiff does not claim exclusive rights over any unprotectable ideas, commonplace motifs, functional features of the garments, or elements dictated by the garments' utilitarian function.

54. The artwork at issue includes hand-designed performed work that is embodied in, sewn on, or applied to the fabric used to make the artistic work of art identified worldwide as Princess Diana's Wedding Dress.

55. Princess Diana's Wedding Dress is identifiable independently of the utilitarian function of the dress. The claim concerns the original applied artwork and embellishments and the protectable and protected expressive decorative elements of the dress, rather than its shape, cut, fit, construction, or functional features (despite their own original artistic elements and iconic design).

56. Likewise, the artwork at issue is embodied in, sewn on, or applied to the fabric used to make the Black Dress, the Blue Dress, the Diaghilev Dress, and the Bridesmaids' Dresses as artistic works of art.

57. As artistic works of art, the Black Dress, the Blue Dress, the Diaghilev Dress, and the Bridesmaids' Dresses are identifiable independently of their utilitarian function. The claim concerns the original applied artwork and embellishments and the protectable and protected expressive decorative elements of the dresses, rather than their shape, cut, fit, construction, or functional features (despite their own original artistic elements and iconic design).

Albright Stoddard Warnick & Albright

58. Plaintiff's copyright ownership derives from her own creation of the Copyrighted Works.

59. In addition, Plaintiff is the exclusive assignee of any copyrights or other rights in the Copyrighted Works formerly belonging to her ex-husband, David Emanuel, who assigned all his right, title, and interest in them to Plaintiff on October 8, 2024. Upon that assignment, David Emanuel relinquished and ceased to have any right, title, or interest in the Copyrighted Works.

60. Pursuant to 17 U.S.C. § 302, Plaintiff's copyrights continue to exist during her lifetime plus 70 years following her death.

61. Plaintiff has not obtained a United States registration for the Copyrighted Works, and those works are foreign-originating works for which the registration prerequisite in 17 U.S.C. § 411(a) does not apply.

62. The United States and the United Kingdom are signatories to the Berne Convention. Thus, Plaintiff is entitled to maintain this action pursuant to 17 U.S.C. § 104(b).

**B. <u>Defendants' Unauthorized Copying and Commercial Exploitation</u>**

63. "Princess Diana & The Royals: The Exhibition," is a permanent, 10,000-square-foot museum experience located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip, featuring more than 700 "authentic" royal items, featuring most prominently the Paper Imitation in an extravagant display called "Wedding of the Century."

64. Recognizing Plaintiff's exclusive copyrights and other rights to the protected elements of Princess Diana's Wedding Dress, an agent for Defendant SBX approached Plaintiff and David Emanuel in or before 2019 to obtain permission to include an exact replica of the dress, including its protectable and protected expressive elements of hand-applied pearls and tens of thousands of hand-applied sequins in original and unique artistic designs and original and unique hand-designed lace, in their exhibition.

AS Albright Stoddard Warnick & Albright

65. Beginning in or around 2020, Plaintiff and David Emanuel engaged in extended negotiations with Danny Fritz, CEO of SBX, for Plaintiff to consent to and authorize Defendants to include an exact replica of Princess Diana's Wedding Dress, including Plaintiff's copyright protected elements thereof, in the Exhibition.

66. As a condition of proceeding with the negotiations, Defendant SBX required Plaintiff and her ex-husband to confirm in writing their ownership of the copyrights and other intellectual property rights to Princess Diana's Wedding Dress, which Plaintiff did by letter dated August 26, 2020.

67. Those negotiations with Defendant SBX were unsuccessful. Plaintiff did not consent to or authorize Defendants to include an exact replica of Princess Diana's Wedding Dress, including Plaintiff's copyright protected elements thereof, in the Exhibition.

68. After their negotiations with Plaintiff were unsuccessful, Defendant SBX then sought permission from David Emanuel, Plaintiff's ex-husband, to include an exact replica of Princess Diana's Wedding Dress, including Plaintiff's copyright protected elements thereof, in the "Princess Diana & The Royals: The Exhibition."

69. However, David Emanuel did not own any copyrights or other rights to Plaintiff's copyright protected elements of Princess Diana's Wedding Dress, and thus lacked authority to authorize Defendants to include any replica of the dress in the "Princess Diana & The Royals: The Exhibition."

70. Having failed in their attempt to obtain rights from Plaintiff or David Emanuel to include a replica of Princess Diana's Wedding Dress in the "Princess Diana & The Royals: The Exhibition," Defendants then commissioned Isabelle de Borchgrave ("de Borchgrave") to recreate the work of art for inclusion in the exhibition.

71. de Borchgrave, who died in 2024, was a Belgian artist and sculptor, best known for creating trompe l'œil ("fool the eye") paper sculptures and paper garments. She

AS Albright Stoddard Warnick & Albright

designed and produced the Paper Imitation for, or under the direction or at the request of, Defendants.

72. Acting for or at the direction of Defendants, de Borchgrave designed and produced the Paper Imitation as a non-functional sculptural work for the "Princess Diana & The Royals: The Exhibition," incorporating the protectable and protected hand-applied pearls and tens of thousands of hand-applied sequins in original and unique artistic designs and original and unique hand-designed lace expressive elements of Princess Diana's Wedding Dress.

73. de Borchgrave imitated the highly stylized and intricately embellished embroidery and lace from Princess Diana's Wedding Dress by crumbling, tearing, folding, and painting the paper to give it the exact weight, depth, and three-dimensional appearance of those artistic elements of the original dress.

74. Without Plaintiff's knowledge or consent, Defendants created or caused to be created the visually identical Paper Imitation of Princess Diana's Wedding Dress and have included the Paper Imitation in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

75. The Paper Imitation mimics the recognizability of the silhouette, dramatic proportions, historical references, and Plaintiff's detailed original decorative designs embellishing Princess Diana's Wedding Dress.

76. Princess Diana's Wedding Dress famously had more than 10,000 pearls and mother-of-pearl sequins applied to the fabric and lace of the dress. de Borchgrave imitated the shimmering effect using specialized paint and metallic and glossy washes that catch the light to replicate the sparkle of the original dress.

77. The illusion created by de Borchgrave's copy is highly realistic and so exact that visitors standing only a few feet away mistake the Paper Imitation for the real embellished silk taffeta and fabric lace of Princess Diana's Wedding Dress.

AS Albright Stoddard Warnick & Albright

78. The Paper Imitation also incorporates other protectable and protected elements of Princess Diana's Wedding Dress, including its extraordinary proportions, construction, and silhouette forming an integral part of the artistic composition and the deliberate and highly recognizable composition of the dress, including the positioning of the flounces at the neckline and elbows, the train addition and unique structure, the lace, and the bows that were fundamental to the overall visual design of the wearable work of art.

79. Although inferior, the Paper Imitation is accurate enough to create the impression that it is an accurate and exact reproduction of Princess Diana's Wedding Dress.

80. The similarities between Princess Diana's Wedding Dress and the Paper Imitation extend beyond unprotectable ideas, commonplace elements, and functional features. They include the protectable and protected expressive elements of hand-applied pearls and tens of thousands of hand-applied sequins in original and unique artistic designs and original and unique hand-designed lace, the dress's extraordinary proportions, construction, and silhouette and its highly recognizable composition that were fundamental to the overall visual design of the original work of art.

81. Without Plaintiff's knowledge or consent, Defendants created or caused to be created an inferior but visually identical copy (the "Imitation Bridesmaids' Dresses") of Plaintiff's original bridesmaids' dresses and have included the Imitation Bridesmaid's Dress in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

82. The Imitation Bridesmaids' Dresses recreate, copy, emulate, imitate, or reproduce the distinctive and entirely decorative yellow sash, decorative layering of the two-tiered hem, decorative hand-applied ruffles with hand-applied, simulated lace at the neckline and elbows, and the decorative flower basket of the Bridesmaids' Dresses.

83. To reinforce the illusion of reality fostered by the Paper Imitation, Defendants also caused the Imitation Bridesmaids' Dresses to be exhibited alongside the

AS Albright Stoddard Warnick & Albright

Paper Imitation, mimicking how the bridesmaids attended to Princess Diana during her wedding.

84. Without Plaintiff's knowledge or consent, Defendants created or caused to be created an inferior, but visually identical, paper replica (the "Imitation Black Dress") of the original Black Dress and have included the Imitation Black Dress in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

85. The Imitation Black Dress recreates, copies, emulates, imitates, or reproduces the distinctive and entirely decorative black silk taffeta with a distinctive and original decorative sequined ruffle on the bodice of the Black Dress.

86. Without Plaintiff's knowledge or consent, Defendants created or caused to be created a visually identical miniature replica (the "Imitation Blue Dress") of Plaintiff's original Blue Dress and have included the Imitation Blue Dress in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

87. The Imitation Blue Dress recreates, copies, emulates, imitates, or reproduces the distinctive and entirely decorative application of thousands of mother-of-pearl sequins in an original and unique design of the Blue Dress.

88. Without Plaintiff's knowledge or consent, Defendants created or caused to be created a visually identical miniature replica (the "Imitation Fairytale Princess Gown") of the Diaghilev Dress and have included the Imitation Fairytale Princess Gown in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

89. The Imitation Fairytale Princess Gown recreates, copies, emulates, imitates, or reproduces the distinctive and entirely decorative hand-applied decorative gold and crystal adornments of the Diaghilev Dress.

90. The Exhibition makes repeated references to Plaintiff as the designer of Princess Diana's Wedding Dress and the Black Dress without Plaintiff's knowledge, permission, or consent.

Albright Stoddard Warnick & Albright

91. Without Plaintiff's knowledge, permission, or consent, the Exhibition also includes for public display a signed, special limited edition of the Wedding Dress Book.

92. On information and belief, Defendants had access to Princess Diana's Wedding Dress before exhibiting the Paper Imitation because they sought permission or authorization from Plaintiff and David Emanuel to create and use an exact replica in the Exhibition and because Princess Diana's Wedding Dress is so iconic as to be widely known and immediately recognizable worldwide. Alternatively, the similarities are so probative of copying that they support an inference that Defendants copied it.

93. Upon information and belief, Defendants also had access to the Black Dress, the Blue Dress, the Diaghilev Dress, and the Bridesmaids' Dresses before exhibiting the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, and the Imitation Bridesmaids' Dresses because the imitations are so visually similar to the originals and because the originals are so widely known and immediately recognizable worldwide that those similarities cannot be accidental or coincidental. The similarities are so probative of copying that they support an inference that Defendants copied them.

94. Defendants have not obtained a license or other authorization from Plaintiff to reproduce, distribute, or commercially exploit the Copyrighted Work in the manner alleged.

95. Defendants are infringers within the meaning of 17 U.S.C. § 501(a).

96. Defendants' infringing acts include (i) directing, causing, or permitting de Borchgrave to design and produce the Paper Imitation incorporating the protectable and protected hand-applied pearls and tens of thousands of hand-applied sequins in original and unique artistic designs and original and unique hand-designed lace expressive elements of Princess Diana's Wedding Dress; and (ii) displaying the Paper Imitation in the Exhibition.

97. Defendants' infringing acts include (i) directing, causing, or permitting the design and production of the Imitation Black Dress, the Imitation Blue Dress, the Imitation

AS Albright Stoddard Warnick & Albright

Fairytale Princess Dress, and the Imitation Bridesmaids' Dresses; and (ii) displaying the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, the Imitation Bridesmaids' Dresses in the Exhibition.

98. Defendants have engaged in these acts in Nevada by displaying the Paper Imitation, the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, the Imitation Bridesmaids' Dresses, and the Wedding Dress Book in the Exhibition at The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

99. Defendants have included in the Exhibition purely commercial or entertainment-focused reproductions of Princess Diana's Wedding Dress, the Black Dress, the Blue Dress, the Diaghilev Dress, and the Bridesmaids' Dresses that simply replace or mimic Plaintiff's artistic highly creative, and imaginative Copyrighted Works in their entirety.

100. Defendants' unauthorized conduct has caused, and unless enjoined is likely to continue causing, harm to Plaintiff, including lost sales, lost licensing opportunities, market displacement, and injury to the commercial value and exclusivity of the Copyrighted Work.

101. Plaintiff has not authorized Defendants' alleged conduct and has not otherwise consented to the acts complained of herein.

102. Defendants have publicly displayed and commercially exploited Plaintiff's Copyrighted Works in a manner that Plaintiff did not, does not, and would not approve.

## COUNT ONE

## COPYRIGHT INFRINGEMENT

## (17 U.S.C. §§ 106 and 501)

103. Plaintiff realleges and incorporates paragraphs 1 through 102 above as though fully set forth herein.

104. Plaintiff owns valid copyright rights in the Copyrighted Work, including the exclusive rights applicable to the protected expression under 17 U.S.C. § 106.

AS Albright Stoddard Warnick & Albright

105. Defendants, without Plaintiff's permission, have violated one or more of Plaintiff's exclusive rights by reproducing the Copyrighted Works, exhibiting the Infringing Works, and commercially exploiting the Infringing Works in violation of applicable provisions of the Copyright Act; or otherwise engaging in conduct constituting infringement under 17 U.S.C. § 501.

106. Defendants' conduct concerns protectable artistic expression in the Copyrighted Works as alleged herein rather than merely the unprotected shape, construction, or utilitarian aspects of the Copyrighted Works.

107. Defendants' unauthorized acts constitute copyright infringement under 17 U.S.C. § 501.

108. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and continues to suffer actual economic injury, including lost licensing revenue, loss of exclusivity, reputational or market harm, and other provable injury.

109. Unless restrained by this Court, Defendants' continued infringement will cause Plaintiff further injury for which monetary relief alone may be inadequate.

## COUNT TWO

## VIOLATION OF NEVADA'S DECEPTIVE TRADE PRACTICES ACT

## (NRS 598.0915(1) and (2))

110. Plaintiff repeats and realleges paragraphs 1 through 102 above as though fully set forth herein.

111. Plaintiff owns the copyrights in the original artistic designs embodied in the Copyrighted Works as alleged herein.

112. Defendants manufactured or caused the manufacture of, exhibited and exhibit, advertised and advertise, and commercially exploited and exploit: (i) the Paper Imitation, which incorporates and copies the protectable and protected elements of Princess Diana's Wedding Dress; (ii) the Imitation Black Dress, which incorporates and copies the protectable and protected elements of the Black Dress; (iii) the Imitation Blue Dress, which

AS Albright Stoddard Warnick & Albright

incorporates and copies the protectable and protected elements of Plaintiff's blue tulle dress; (iv) the Imitation Fairytale Princess Dress, which incorporates and copies the protectable and protected elements of Plaintiff's Diaghilev Dress; and (v) the Imitation Bridesmaid Dress, which incorporates and copies the protectable and protected elements of Plaintiff's Bridesmaids Dresses. Such conduct constitutes deceptive trade practices under NRS 598.0915.

113. Defendants' commercial advertising and exhibition of the Paper Imitation, including the use of artwork substantially similar to Plaintiff's original design, is likely to cause consumers to believe that the Paper Imitation embodies Plaintiff's original design or is Princess Diana's Wedding Dress, or that the Paper Imitation originated with, was sponsored by, or was authorized by Plaintiff.

114. Though incorporating many of the protected design elements of Plaintiff's highly original and historically significant artistic design, the Paper Imitation is far inferior to Princess Diana's Wedding Dress.

115. The visual similarity of the Paper Imitation to Princess Diana's Wedding Dress is likely to cause confusion as to the actual quality of Princess Diana's Wedding Dress and of Plaintiff's artistry and skill.

116. Defendants' commercial advertising and exhibition of the other Infringing Works, including the use of artwork substantially similar to Plaintiff's original designs, are likely to cause consumers to believe that the Infringing Works embody Plaintiff's original design or is Princess Diana's Wedding Dress, or that the other Infringing Works originated with, were sponsored by, or were authorized by Plaintiff.

117. Though incorporating many of the protected design elements of Plaintiff's highly original and historically significant artistic design, the Imitation Black Dress is far inferior to the genuine Black Dress.

Albright Stoddard Warnick & Albright

118. The visual similarity of the Imitation Black Dress to the genuine Black Dress is likely to cause confusion as to the actual quality of the Black Dress and of Plaintiff's artistry and skill.

119. Though incorporating many of the protected design elements of Plaintiff's highly original and historically significant artistic design, the Imitation Blue Dress is far inferior to the genuine Blue Dress.

120. The visual similarity of the Imitation Blue Dress to the genuine Blue Dress is likely to cause confusion as to the actual quality of the Blue Dress and of Plaintiff's artistry and skill.

121. Though incorporating many of the protected design elements of Plaintiff's highly original and historically significant artistic design, the Imitation Fairytale Princess Dress is far inferior to the Diaghilev Dress.

122. The visual similarity of the Imitation Fairytale Princess Dress to the genuine Diaghilev Dress is likely to cause confusion as to the actual quality of the Diaghilev Dress and of Plaintiff's artistry and skill.

123. Though incorporating many of the protected design elements of Plaintiff's highly original and historically significant artistic design, the Imitation Bridesmaids' Dresses are far inferior to the genuine Bridesmaids' Dresses.

124. The visual similarity of the Imitation Bridesmaids' Dresses to the genuine Bridesmaids' Dresses are likely to cause confusion as to the actual quality of the Bridesmaids' Dresses and of Plaintiff's artistry and skill.

125. Likewise, Defendants' commercial advertising and exhibition of the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, and the Imitation Bridesmaid Dresses, all including the use of artwork substantially similar to Plaintiff's original designs, are likely to cause consumers to believe that the imitation dresses embody Plaintiff's designs or are Plaintiff's original works, or that the imitation dresses originated with, were sponsored by, or were authorized by Plaintiff.

126. The likelihood of confusion arises from, among other things, the extent to which the Paper Imitation, the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, and the Imitation Bridesmaid Dresses (collectively, the "Infringing Works") are visually virtually identical to Plaintiff's original artistic creations.

127. Defendants knew of Plaintiff's original designs and, notwithstanding that knowledge, engaged in the conduct described above.

128. Defendants' use of Plaintiff's name in the Exhibition is likely to cause consumers to believe that the Infringing Works embody Plaintiff's original designs or are the genuine Copyrighted Works, or that they originated with, were sponsored by, or were authorized by Plaintiff.

129. Defendants' inclusion of the Wedding Dress Book in the Exhibition is likely to cause consumers to believe that the Infringing Works embody Plaintiff's original designs or are the genuine Copyrighted Works, or that they originated with, were sponsored by, or were authorized by Plaintiff.

130. In the course of their business or occupation, Defendants knowingly passed off the Paper Imitation, the Imitation Black Dress, the Imitation Blue Dress, the Imitation Fairytale Princess Dress, and the Imitation Bridesmaid Dresses as goods embodying Plaintiff's original works and designs, or knowingly made false representations concerning the source, sponsorship, or approval of the inferior reproductions, in violation of NRS 598.0915(1) or NRS 598.0915(2), or both.

131. Defendants' conduct has occurred in connection with commercial activity in Nevada, including exhibiting the Infringing Works in the Exhibition located in The Shops at Crystals in the ARIA Resort & Casino on the Las Vegas Strip.

132. As a direct result of Defendants' deceptive trade practices, Plaintiff has suffered injury, including lost licensing revenue, confusion, loss of exclusivity, reputational and market harm, loss of customers, and other legally cognizable injury.

AS Albright Stoddard Warnick & Albright

AS Albright Stoddard Warnick & Albright

133. Defendants' conduct is continuing or is likely to recur, causing ongoing harm to Plaintiff.

134. Plaintiff seeks damages and other relief available under applicable Nevada law, including NRS 41.600.

**COUNT THREE**

**VIOLATION OF NEVADA STATUTORY RIGHT OF PUBLICITY**

135. Plaintiff repeats and realleges paragraphs 1 through 102 above as though fully set forth herein.

136. Plaintiff is a living person whose name is protected by NRS 597.790.

137. Under NRS 597.790(1), a person has a right to control the commercial exploitation of his or her name, voice, signature, photograph, and likeness throughout his or her life and 50 years after his or her death.

138. With few exceptions that do not apply here, NRS 597.790(2) prohibits the commercial use in Nevada by another of the name, voice, signature, photograph, or likeness of a person, wherever located, without that person's written consent.

139. Pursuant to NRS 597.780, the prohibitions of NRS 597.790(2) apply to any commercial use in Nevada of a living or deceased person's name, voice, signature, photograph, or likeness regardless of that person's domicile.

140. Defendants have used Plaintiff's name, voice, signature, photograph, or likeness in the Exhibition for commercial purposes in Nevada during her lifetime without Plaintiff's permission.

141. Defendants' use of Plaintiff's name, voice, signature, photograph, or likeness in the Exhibition for commercial purposes in Nevada during her lifetime without her permission violates NRS 597.790(2).

142. As a direct, proximate, and foreseeable result of Defendants' unauthorized commercial uses of Plaintiff's name, voice, signature, photograph, or likeness in the Exhibition for commercial purposes, Plaintiff has suffered and is threatened with injury,

AS Albright Stoddard Warnick & Albright

including confusion about her participation in or endorsement of the Exhibition as well as confusion regarding the nature, character, and quality of her original artistic creations through association with the inferior copies displayed in the Exhibition.

143. Defendants' conduct has interfered with Plaintiff's right to control the commercial use of her own name and has deprived Plaintiff of the opportunity to decide whether, and on what terms and conditions, her name may be used commercially.

144. Plaintiff is entitled to the remedies authorized by NRS 597.810, including applicable damages and injunctive relief.

145. Defendants knowingly made unauthorized commercial use of Plaintiff's name and are liable to Plaintiff for additional damages under NRS 597.810.

**COUNT FOUR**

**COMMON LAW INVASION OF PRIVACY**

146. Plaintiff repeats and realleges paragraphs 1 through 102 above as though fully set forth herein.

147. Although a famous fashion designer, Plaintiff is a private individual and not a celebrity.

148. Nevada recognizes a common-law invasion-of-privacy tort based on the appropriation of an individual's name or likeness.

149. The common-law invasion of privacy tort prohibits the unwanted and unpermitted use of an ordinary individual's name or likeness for advertising or other commercial purposes.

150. Plaintiff is an individual whose name identifies her and whose personal interest in controlling the unwanted use of that identity is protected by Nevada law.

151. Defendants appropriated Plaintiff's name by using it in connection with the Exhibition and its commercial promotion without Plaintiff's permission.

152. Defendants' conduct was intentional or was undertaken with knowledge that the challenged use of Plaintiff's name was unauthorized, as shown by their prior

Albright Stoddard Warnick & Albright

attempts to seek Plaintiff's consent to use her original artistic creations in the Exhibition, which Plaintiff denied, but Defendants nonetheless used inferior imitations of Plaintiff's works expressly created for such purpose in the Exhibition.

153. Defendants used Plaintiff's name to attract attention to the Exhibition, to promote its contents, to create a false air of legitimacy to the Exhibition, and to encourage attendance at the Exhibition and purchases thereat, thereby appropriating Plaintiff's identity for their own commercial purposes and profit.

154. Defendants' challenged use of Plaintiff's identity was unwanted and unpermitted.

155. Defendants' appropriation of Plaintiff's name was highly offensive to Plaintiff under the circumstances because:

a. Defendants' inferior imitations of Plaintiff's original artistic creations used in the Exhibition cast Plaintiff in a negative public light;

b. Plaintiff opposed and opposes the commercial exploitation of her original artistic creations in the Exhibition in the manner Defendants have used them; and

c. Defendants' choice of the manner of display of the inferior imitations of Plaintiff's original artistic creations in the Exhibition, such as by permitting paying customers to walk upon a transparent walkway covering the train of the Paper Imitation, simulating walking on the train of Princess Diana's Wedding Dress, which disrespects the artistic integrity and historical significance of Plaintiff's work.

156. As a direct, proximate, and foreseeable result of Defendants' conduct alleged herein, Plaintiff has suffered personal injury, including emotional distress, embarrassment, humiliation, loss of privacy, and injury to her reputation.

157. Defendants' conduct has caused and threatens continuing injury to Plaintiff's personal privacy interests.

158. Plaintiff seeks relief for the personal injuries resulting from Defendants' misappropriation of her identity, as distinguished from the economic injury addressed by the statutory right-of-publicity claim in Count Three hereof.

159. Plaintiff does not seek duplicative recovery for the same injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly, severally, or individually, and grant the following relief:

A. Declaratory relief determining that Defendants infringed Plaintiff's copyright in the Copyrighted Work, to the extent established by the evidence;

B. Injunctive relief under 17 U.S.C. § 502 prohibiting Defendants, their officers, agents, employees, and persons acting in concert with them who receive actual notice of the injunction, from infringing Plaintiff's rights in the Copyrighted Work;

C. Monetary relief under 17 U.S.C. § 504, including Plaintiff's actual damages and any profits of Defendants attributable to the infringement that are legally recoverable and not already accounted for in Plaintiff's damages;

D. Impoundment and disposition of infringing articles and other materials, to the extent authorized by 17 U.S.C. § 503;

E. Proven damages resulting from the alleged deceptive trade practices;

F. Actual and statutory damages allowable and recoverable under Nevada state law, including NRS 41.600 and NRS 597.810;

G. Appropriate equitable relief to the extent authorized by law;

H. Costs and attorney's fees, to the extent recoverable under 17 U.S.C. § 505 or Nevada state law;

I. Pre-judgment and post-judgment interest; and

J. Such other and further relief as the Court deems just and proper.

AS Albright Stoddard Warnick & Albright

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED November 2, 2026.

**ALBRIGHT, STODDARD, WARNICK & ALBRIGHT**

By: /s/ G. Mark Albright
G. MARK ALBRIGHT, ESQ.
Nevada Bar No. 1394
801 South Rancho Drive, Suite D-4
Las Vegas, Nevada 89106
T: 702-384-7111 / F: 702-384-0605
gma@albrightstoddard.com

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Mark C. Rifkin (*pro hac vice* forthcoming)
Jean Y. du Pont (*pro hac vice* forthcoming)
270 Madison Avenue, 9th Floor
New York, New York 10016
T: 212-545-4600

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Betsy C. Manifold (*pro hac vice* forthcoming)
Symphony Towers, 750 B Street, Suite 1820
San Diego, California 92101
T: 619-238-4599

*Attorneys for Plaintiff Elizabeth Florence Emanuel*